**Opinion filed November 30, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00361-CR

_____

## CECIL WELDON HOLLAND, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 18199B**

## O P I N I O N

Cecil Weldon Holland appeals his jury conviction for aggravated assault with a deadly weapon. The jury assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of forty-eight years. In four issues on appeal, Appellant asserts that the trial court erred when it refused his requests for a charge on a lesser included offense and various defensive instructions. We reverse and remand for a new trial.

### Background Facts

On April 23, 2011, Appellant attended a barbecue at a friend's house in Abilene. Clifton Burnett, a neighbor, just showed up at the barbecue. He appeared

to be intoxicated and was asked to leave by the homeowner. Burnett left the house, only to return later with his fiancée, Rochelle Lawrence. A verbal altercation then ensued between Jacky Davenport, a guest at the barbecue, and Burnett and Lawrence. Davenport lived next door to the host of the barbecue and was eight month's pregnant at the time of the altercation. As the argument escalated, Davenport apparently retreated to her yard. Burnett and Lawrence followed Davenport into her yard where the altercation continued. Davenport purportedly slapped Lawrence, which Appellant asserted that he did not see. Appellant testified that he then saw Davenport fall to the ground, clutching her stomach and screaming in anguish.

Appellant testified that he believed Davenport had been struck and that he feared for the life of Davenport and her unborn child. Appellant also testified that Burnett continued to yell at Davenport while she was on the ground. Claiming that he feared for the life of Davenport and her unborn child, Appellant attacked Burnett with a small knife, cutting his throat. Burnett testified that, due to the cut to his throat, he spent nine days in the hospital, underwent numerous surgeries, and lost 30% of his memory. He further testified that he has trouble breathing, sustained nerve damage to his throat, and will require at least one more surgery.

Appellant was charged with aggravated assault with a deadly weapon in a two-paragraph indictment. The jury convicted him of the offense as it was alleged in Paragraph One of the indictment. Specifically, Appellant was found guilty of intentionally or knowingly using a deadly weapon—a knife—that in the manner of its use and intended use was capable of causing death or serious bodily injury, and intentionally or knowingly causing bodily injury to Burnett by cutting him on or about the throat with the knife.

*Analysis*

In Appellant's second issue, he contends that the trial court erred when it refused his requested instruction on the defense of Davenport's unborn child. *See* TEX. PENAL CODE ANN. § 9.33 (West 2011). Appellant requested multiple jury instructions on defensive issues, including separate instructions for the defense of third persons pertaining to both Davenport and her unborn child. Over the State's objection, the trial court included an instruction for the defense of Davenport. However, the trial court denied Appellant's requested instruction for the defense of the unborn child. In announcing its ruling, the trial court advised the parties that it believed that the instruction for the defense of Davenport "would apply both to Jacky Davenport and to her unborn child." However, the trial court further advised Appellant's trial counsel that "this charge doesn't have anything to do with the unborn child" and that "if you start to make some legal arguments regarding the unborn child, and [the prosecutor] objects, then I'm likely to sustain his objection."

We review a complaint of jury-charge error under a two-step process, considering first whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985).

The trial court is required to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case [and] not expressing any opinion as to the weight of the evidence." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court must give a requested instruction on every defensive issue that is raised by the evidence. *See Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). A defensive issue is raised by the evidence if there is some evidence, regardless of its source, on each element of a defense that, if believed by the jury, would support a rational inference that the element is true. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). When deciding whether a defensive

issue has been raised by the evidence, a court must rely on its own judgment, formed in light of its own common sense and experience, as to the limits of rational inference from the facts that have been proven. *Id.* at 658. The defendant is entitled to an instruction on a defense when there is legally sufficient evidence to raise the defense, regardless of whether the evidence supporting the defense is weak or contradicted and even if the trial court is of the opinion that the evidence is not credible. *Id.* Whether the record contains such evidence is a question of law, which means that we do not apply the usual rule of appellate deference to the trial court's ruling. *Id.* "Quite the reverse, we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

Section 9.33 of the Penal Code provides:

A person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

The focus of the defense-of-third-person defense is upon what the actor reasonably believes concerning the situation of the third person. *Morales v. State*, 357 S.W.3d 1, 8 (Tex. Crim. App. 2011).

The State initially contends that Appellant failed to request an instruction for the defense of the unborn child. In advancing this argument, the State directs our attention to an earlier portion of the charge conference wherein Appellant's trial counsel submitted a general instruction on the defense of a third person without

4

specifying the unborn child as one of the "third persons" that he sought to protect. However, Appellant's trial counsel subsequently apprised the trial court that he was specifically requesting an instruction for the defense of the unborn child when he stated:

> Your Honor, I will -- I'd like to clarify. I submitted two written requests for instructions, and one of them is defense of a third person, and I want to be certain that the record reflects that what I mean by that, although there's one motion filed, there's a request for -- of included instruction that -- I mean, defense of third person, Jacky Davenport, and defense of another third person, that person being Eddie Crippen, the unborn child of Jacky Davenport . . . .

Accordingly, the record reflects that Appellant requested an instruction on the defense of Davenport's unborn child.

The State additionally contends that there was no evidence requiring the submission of an instruction for the defense of a third person with respect to the unborn child. Specifically, the State asserts that "[n]o evidence shows that Burnett was using any force or deadly force to meet the statutory requirement of defense of the unborn child." The State is essentially asserting that Appellant was not entitled to an instruction for the defense of either Davenport or the unborn child. We disagree.

Davenport fell to the ground during the altercation. Lawrence acknowledged that she may have kicked Davenport in the stomach while she was on the ground. When asked at trial whether he believed that Davenport and her unborn child would suffer further serious bodily injury or death if he did not intervene in the manner that he did, Appellant replied: "Sure, I did. Sure, I did. Because the *two people* . . . weren't backing off" (emphasis added). The fact that Burnett was not the one who kicked Davenport does not preclude the possibility that Appellant sought to defend her from an attack by Burnett. "When there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or a threatened attack at the

hands of more than one assailant, the court should instruct the jury that he had a right to defend himself against either or both of them." *Wilson v. State*, 145 S.W.2d 890, 893 (Tex. Crim. App. 1940). We see no reason why this same logic would not apply to the defense of a third person that is the subject of an attack by multiple assailants. If Appellant reasonably believed cutting Burnett's throat was immediately necessary to protect Davenport and her unborn child from both Lawrence and Burnett, then the evidence raised the issue of defense of a third person. *See id.*; *see also Frank v. State*, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985); *Sanders v. State*, 632 S.W.2d 346, 348 (Tex. Crim. App. [Panel Op.] 1982); *Dugar v. State*, 464 S.W.3d 811, 817 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Lying at the heart of Appellant's second issue is the question of whether or not he was entitled to an additional instruction for the defense of the unborn child after the trial court gave an instruction for the defense of the pregnant mother. The resolution of this question is critical to our determination of error on the part of the trial court. As noted above, Section 9.33 applies to the defense of a "third person." Under the Penal Code, "person" means "an individual, corporation, or association." PENAL § 1.07(a)(38) (West Supp. 2015). As the result of a 2003 amendment, the Penal Code now defines an "individual" as "a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." *Id.* § 1.07(a)(26). In reliance upon this definition of an "individual," the Texas Court of Criminal Appeals determined that an unborn child is an individual, and thus a person, with respect to the capital murder statute. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *see* PENAL § 19.03(a)(7)(A). Thus, a person that murders a pregnant mother and her unborn child commits two murders. *Lawrence*, 240 S.W.3d at 915. We conclude that this same reasoning applies in the context of the defense of third persons as set out in Section 9.33. If Appellant believed that attacking Burnett was immediately necessary to protect Davenport's unborn child

6

from unlawful force, then Appellant would be entitled to an instruction on defense of a third person for the unborn child. Accordingly, the trial court should have included an instruction for the defense of the unborn child in addition to the instruction for the defense of Davenport.

Finding that the trial court erred, we now determine whether the error was harmful. Since Appellant requested the instruction for the defense of the unborn child, reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error. *Almanza*, 686 S.W.2d at 171. "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000) (quoting *Almanza*, 686 S.W.2d at 171).

The State asserts that, "[s]ince the jury rejected the defense of a third person with regard to Davenport, it is not rational that the jury would find that a defense of the unborn child would have been a reasonable alternative, especially when the evidence showed no harm resulted in [sic] the unborn child." We disagree with the State's contention that the jury's rejection of the defense of a third person pertaining to Davenport provides us with an assurance that Appellant suffered no harm by the omission of an instruction regarding the defense of the unborn child.

The application portion of the jury charge regarding the defense of a third person stated as follows:

**Defense Of A Third Person**

> Now, notwithstanding the foregoing, if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of April, 2011, in Taylor County, Texas, the defendant, Cecil Weldon Holland, did intentionally or knowingly use a deadly weapon, to wit: a knife, and caused bodily injury or serious bodily injury, to Clifton Jamal Burnett by cutting the said Clifton Jamall Burnett on or about the throat

7

with said deadly weapon, but you further find from the evidence, or you have a reasonable doubt thereof, that at the time Jacky Davenport was under attack or attempted attack from Clifton Jamall Burnett, that the defendant reasonably believed, as viewed from his standpoint, that such force as he used, if any, was immediately necessary to protect Jacky Davenport against such attack or attempted attack, *and that, under the circumstances as Cecil Weldon Holland reasonably believed them to be, Jacky Davenport would be entitled to defend herself against this unlawful force*, and so believing, he cut Clifton Jamall Burnett on or about the throat with a knife, then you will find the defendant "not guilty" of both paragraphs in the indictment.

(Emphasis added). Thus, the jury charge conditioned Appellant's reliance on the defense of Davenport upon his belief that she would have been entitled to defend herself against Burnett's and Lawrence's attack. The jury received evidence that Davenport slapped Lawrence, provoking Lawrence to kick Davenport in the stomach. Under the provisions of the jury charge, this evidence may have convinced the jury that Appellant's reliance on the defense of Davenport was not justified if he believed that she provoked the attack. In this regard, the prosecutor argued during closing argument that Davenport was a "provocateur" that would not be entitled to rely on self-defense in repelling the attack but, rather, had a duty to retreat. Conversely, logic dictates that an unborn child could not have provoked an attack.

We conclude that Appellant suffered "some harm" from the omission of an instruction on the defense of the unborn child because the matters of provocation and a duty to retreat that may have been attributed to the pregnant mother would not be attributable to the unborn child. Furthermore, the jury might have determined that greater force was necessary to protect the unborn child than was necessary to protect the pregnant mother. The absence of a separate instruction for the defense of the unborn child precluded the jury from reaching this determination. Accordingly, we sustain Appellant's second issue. We need not address the remaining issues. Tex. R. App. P. 47.1.

8

*This Court's Ruling*

We reverse the judgment of the trial court and remand the cause for a new trial.

JOHN M. BAILEY

JUSTICE

November 30, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.